STATE OF NORTH CAROLINA v. MARCUS JAMERSON

No. 8224SC1267

(Filed 4 October 1983)

**1. Criminal Law § 7— evidence of entrapment sufficient to go to jury**

In a prosecution for possession of cocaine with intent to sell and deliver and for sale and delivery of cocaine, the defendant presented sufficient evidence of entrapment to require a jury instruction where defendant testified that an undercover agent and a police informer initiated a conversation about drugs, that he made no attempt to find drugs for the men between 8:30 and 11:30 p.m., and that defendant finally agreed to make the purchase only after considerable urging by the informant, and only after the undercover agent located a person who would sell the drugs to defendant. Further, defendant's evidence tended to show that the undercover agent drove defendant to the college campus to buy the drugs, and that the informant supplied the money for the purchase.

**2. Criminal Law § 26.5; Narcotics § 1.3— possession of cocaine with intent to sell or deliver and sale or delivery of cocaine—no violation of double jeopardy**

Dual indictments charging defendant with possession of cocaine with intent to sell or deliver and with actual sale or delivery of the same drugs did not violate the constitutional bar against double jeopardy.

APPEAL by defendant from *C. Walter Allen, Judge.* Judgment entered 20 May 1982 in WATAUGA County Superior Court. Heard in the Court of Appeals 20 September 1983.

Defendant, a varsity football player at Appalachian State University at the time of his arrest, was indicted in May, 1981, for possession of cocaine with intent to sell and deliver, and for

sale and delivery of cocaine. Defendant was tried in May, 1982 and convicted of both charges. Evidence for the State tended to show that on May 4, 1981, defendant was approached by Ross Sheets, an undercover agent working with the Watauga County Sheriff's Department, and Keith Greer, an acquaintance of defendant who secretly worked as a police informant. Sheets and Greer asked defendant if he would sell them some drugs, but defendant said he had no drugs on hand. Defendant told the pair to return that night, when defendant would take them to someone who would sell them the drugs they were looking for. Sheets and Greer returned about 11:30 p.m. and drove with defendant to the ASU campus in Greer's car. Sheets gave defendant money, and defendant entered a nearby dormitory alone, returning after about 20 minutes with a substance later identified as cocaine. The three men returned to defendant's apartment where defendant and Greer sampled the cocaine. Defendant told the men to return a few days later if they wished to buy some other drugs.

Evidence for defendant tended to show that Sheets and Greer appeared at defendant's apartment about 8:30 p.m., May 4, 1981. Greer introduced Sheets as his cousin from West Virginia. Sheets asked defendant to sell him some drugs, but defendant said he didn't have any drugs. Greer asked defendant to try to find someone who had drugs, and promised to return with Sheets around 11:30 p.m. Instead of making calls or attempts to obtain drugs, however, defendant dismissed the matter and took a nap. When Greer and Sheets returned, defendant again said he had no drugs to sell. Sheets told defendant repeatedly that he was an addict and was desperate for drugs. Finally, Greer told defendant he knew of a student on campus who would be willing to sell drugs to defendant, and offered defendant $15.00 to make the purchase. Greer then took Sheets and defendant to the campus, where defendant made the purchase from the person identified by Greer, while Sheets and Greer waited in the car.

At trial, defendant did not deny that he played a role in obtaining the drugs. Instead, his sole defense was that he was entrapped by Greer and Sheets. The trial court, however, ruled there was insufficient evidence of entrapment and refused to instruct the jury on the defense. Defendant was convicted of both charges and the offenses were consolidated for sentencing. From

the verdicts of guilty, and entry of a sentence of one to four years in prison, defendant appealed.

*Attorney General Rufus L. Edmisten, by Associate Attorney Newton G. Pritchett, Jr., for the State.*

*Appellate Defender Adam Stein, by Assistant Appellate Defender Lorinzo L. Joyner, for defendant.*

WELLS, Judge.

[1] Defendant first argues that the trial court erred in failing to instruct the jury on the defense of entrapment. We agree. In order to establish the defense of entrapment, the defendant must prove "(1) acts of persuasion, trickery or fraud carried out by law enforcement officers or their agents to induce a defendant to commit a crime, (2) . . . the criminal design originated in the minds of the government officials, rather than with the innocent defendant, such that the crime is the product of the creative activity of the law enforcement authorities." *State v. Walker,* 295 N.C. 510, 246 S.E. 2d 748 (1978).

A defendant is entitled to a jury instruction on entrapment whenever the defense is supported by defendant's evidence, viewed in the light most favorable to the defendant. *State v. Walker, supra, State v. Burnette,* 242 N.C. 164, 87 S.E. 2d 191 (1955). The instruction should be given even where the state's evidence conflicts with defendant's. *Id.*

Viewed in the light most favorable to defendant, there was sufficient evidence in the case at bar to require a jury instruction on the entrapment defense. Defendant testified that Greer and Sheets initiated the conversation about drugs, that he made no attempts to find drugs for the men between 8:30 p.m. and 11:30 p.m. on May 4, 1981, and that he agreed to make the purchase only after considerable urging by Sheets, and only after Greer located a person who would sell drugs to defendant. Further, defendant's evidence tended to show that Greer drove defendant to the college campus to buy the drugs, and that Sheets supplied the money for the purchase.

Similar facts have been previously held sufficient to warrant entrapment instructions. *See e.g., State v. Grier,* 51 N.C. App.

209, 275 S.E. 2d 560 (1981) (undercover agent supplied money for drug purchase and drove the defendant to home of supplier, after ingratiating himself with the defendant by making frequent visits and giving the defendant presents); *State v. Hartman,* 49 N.C. App. 83, 270 S.E. 2d 609 (1980) (defendant promised a job if he would sell LSD that afternoon); *State v. Braun,* 31 N.C. App. 101, 228 S.E. 2d 466, *app. dismissed,* 291 N.C. 449, 230 S.E. 2d 766 (1976) (agent picked up the defendant who was hitchhiking and when the defendant stated he was high, he was asked if he would sell drugs. The agent called the next day and drove the defendant to the home of a third person identified by the defendant, where marijuana was purchased). *But see State v. Booker,* 33 N.C. App. 223, 234 S.E. 2d 417 (1977) (no jury instruction required where only evidence was that agent asked the defendant for drugs, defendant at first refused, and then later agreed to obtain drugs when agent stated he was a junkie and needed drugs badly. Agent supplied money for the purchase and lent car to the defendant).

[2] Defendant next argues that the dual indictments, charging him with possession of cocaine with intent to sell or deliver and with actual sale or delivery of the same drugs, violated the constitutional bar against double jeopardy. This argument is controlled by *State v. Cameron,* 283 N.C. 191, 195 S.E. 2d 481 (1973). In that case, our Supreme Court held that the former jeopardy rule does not bar convictions of a defendant for both possession of heroin and sale of the same contraband. Defendant argues, however, that *Cameron* and its progeny do not decide whether double jeopardy is violated where the only act of possession is that required to complete the act of selling the drug.

Defendant's argument ignores both the language of *Cameron,* and a number of later cases in which the defendants were convicted of possession and sale of the same drug under facts similar to the case at bar. The *Cameron* court addressed the argument that possession of a drug should not be a separate offense when it occurs only as part of the act of selling the same contraband as follows:

> Two things will help us in our thinking: we are not dealing with common law crimes but with statutory offenses; and not with a single *act* with two criminal labels but with *component*

*transactions* violative of distinct statutory provisions denouncing them as crimes . . . . The incidental fact that possession goes with the transportation is not significant in law as defeating the legislative right to ban both or either.

*Citing State v. Chavis,* 232 N.C. 83, 59 S.E. 2d 348 (1950) (emphasis in original). The *Cameron* court went on to note that the length of time of possession is not controlling in determining whether the offense of possession has occurred.

The unlawful sale of a narcotic drug is a specific act and a given sale occurs only at one specific time. Unlawful possession, however, is a continuing violation of the law. It begins as soon as an individual first unlawfully obtains possession of the drug, whatever the purpose of that possession might be . . . The length of time makes no difference.

*Id.*

The arguments and reasoning of *Cameron,* decided under G.S. 90-98, were held applicable to the current drug offense statute, G.S. 90-95, in *State v. Stoner,* 59 N.C. App. 656, 298 S.E. 2d 66 (1982). The facts of *Stoner* are also similar to those of the case at bar. In *Stoner,* the defendant was convicted of two counts each of possession and sale of marijuana. These convictions arose out of sales on two different dates to undercover agents. On the later date, the defendant did not have drugs in his possession when approached by the undercover agent. Instead, the defendant told the agent that he had no drugs, but could get some from his mother's home some distance away. Defendant got in the agent's car and the pair went to the defendant's mother's home, where defendant got the drug and sold it to the agent. There apparently was no evidence of possession of the marijuana beyond that necessarily involved in the sale. *See also State v. Neville,* 49 N.C. App. 684, 272 S.E. 2d 164 (1980), *aff'd,* 302 N.C. 623, 276 S.E. 2d 373 (1981) (drugs obtained from home of third person unrelated to defendant and handed directly into car window to undercover agent).

While the issue of double jeopardy was not directly considered by the *Stoner* and *Neville* courts, the defendants in both of those cases were convicted of possession of contraband as well

as sale, despite the fact there was no act of possession independent of the sale. Thus, it is clear from the language of *Cameron* that the rule of *Cameron* controls this case and defendant's assignment of error is therefore overruled.

Finally, defendant assigns as error that the judgment erroneously states that defendant was found guilty of two counts of selling and delivery of cocaine. This is clearly the result of a clerical error, and the judgment should be corrected to show that defendant was convicted of one count of sale and one count of possession of cocaine.

Because the trial court erred in refusing to instruct the jury on the entrapment defense, defendant must have a

New trial.

Judges ARNOLD and EAGLES concur.